UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| CHRISTOPHER BAILEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:15-cv-0272-JMS-MJD |
| ) | |
| DUSTIN ROBBINS, ) | |
| ) | |
| Defendant. ) | |

**Entry Granting Defendant's Motion for Summary Judgment
and Directing Entry of Final Judgment**

For the reasons explained in this Entry, the defendant's motion for summary judgment, dkt. [53], is **granted.**

## I. Background

This 42 U.S.C. § 1983 civil rights action was filed on September 8, 2015. The plaintiff is Christopher Bailey ("Mr. Bailey"), an inmate who at all relevant times was confined at the Wabash Valley Correctional Facility ("Wabash"). The defendant is Correctional Officer Dustin Robbins. Mr. Bailey alleges that Officer Robbins placed him in danger and violated his Eighth Amendment rights when he released another offender from a cell at a time when the plaintiff was supposed to be the only offender out of his cell. The other offender assaulted Mr. Bailey. Mr. Bailey seeks compensatory damages.

The defendant seeks resolution of the plaintiff's claims through summary judgment. The plaintiff has responded to the defendant's motion for summary judgment and the defendant has replied. The plaintiff filed a surreply. The motion is ripe for resolution.

## II.  Summary Judgment Standard

Summary judgment is appropriate when the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). To survive a motion for summary judgment, the non-moving party must set forth specific, admissible evidence showing that there is a material issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).  The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor.  *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008).  It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder.  *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011).

A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris,* 550 U.S. 372, 380 (2007).

## III.  Discussion

### A.  Undisputed Facts

The following statement of facts was evaluated pursuant to the standards set forth above. That is, this statement of facts is not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light reasonably most favorable to Mr. Bailey as the non-moving party with respect to the motion for summary judgment. *See Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 150 (2000).

On February 14, 2014, Mr. Bailey was housed in a segregation unit at Wabash. On that day, Officer Robbins took over the control pod officer duties from another correctional officer mid-shift. At this time, Officer Robbins had been employed at the prison for eight months, working most of that time in a different area of the prison. This was only the second time Officer Robbins operated this particular panel. The control pod is a circular module encased in glass. From the control module, the control pod officer can observe all 6 ranges in B cell house and is responsible for the opening and closing of the doors for each cell and the doors that allow access onto and off of each range.

An inmate detail worker (also called a range worker) is responsible for cleaning the range, which involves sweeping and mopping, cleaning the showers, cleaning empty cells, and passing out toilet paper and laundry to other inmates on the range. At the time Officer Robbins took over the control pod officer duties, the detail worker, Mr. Bailey, was already out of his cell performing his duties on the range.

At the time Officer Robbins took over the control pod officer duties, Officer Adam Davis was doing "rounds," whereby he walked through each range and did a security check. As part of his rounds, once Officer Davis completed walking through one range he would then proceed to do a security check on the next range. Before the officer walked through each range to do his round, the detail worker on each range was to lock up in either the detail worker's own cell or a shower cell. The detail worker was to lock up in this manner because, for security reasons, officers cannot enter the range while inmate detail workers are out of their cells.

After the officer finished doing his rounds on a range, Officer Robbins was to open the cell where the detail worker was locked-up so that the detail worker could finish his duties. In an effort to facilitate the expeditious completion of rounds, Officer Robbins tried to simultaneously

order the detail workers in each respective range to lock up, shut the doors for each detail worker once the worker entered a cell to lock up, observe Officer Davis while he was doing his rounds, open the respective doors between ranges so that Officer Davis could move from range to range, and open the cell on each range where the detail worker locked up after Officer Davis completed doing his round on that range. On this day, Officer Davis completed his round on Mr. Bailey's range and moved on to the next range.

Officer Robbins forgot which cell Mr. Bailey had used to lock up during Officer Davis' round. From the control pod, an officer can isolate cell doors as an extra security measure to make sure that those doors do not open accidentally. On Mr. Bailey's range, all the cells had been isolated except two. One of the non-isolated cells was open and another was closed. Officer Robbins believed the non-isolated open cell was unoccupied.

Officer Robbins believed that Mr. Bailey had locked up in the non-isolated closed cell while Officer Davis was completing his round, so Officer Robbins opened that cell, cell 307, so that Mr. Bailey could finish his work as a detail worker. When no one exited the non-isolated formerly closed cell, Officer Robbins thought that that cell was empty and he opened the lower range shower cell.  Officer Robbins noticed that Mr. Bailey exited the lower range shower cell and Officer Robbins continued to observe Officer Davis do his rounds.

After Mr. Bailey exited the shower cell, he talked with the offenders in cells 304/305. Mr. Bailey started to go up the stairs, but paused at the bottom of the stairs and looked in the direction of cell 307 occupied by inmate Asher Hill. Offender Hill was out of his cell. Offender Hill retrieved a push broom that had been leaning against cell 309, went back into his cell, and then exited his cell with a broom handle in hand.

Offender Hill started to go down the stairs with the broom handle. Mr. Bailey started to run across the bottom of the range from the recreation door to the range door. As Mr. Hill reached the bottom of the stairs, he started to swing the broom handle at Mr. Bailey. Mr. Hill continued to swing the broom handle at Mr. Bailey as Mr. Bailey ran to the range door. Mr. Bailey was "nipped" on the back of the head by one of offender Hill's swings.

Mr. Bailey acknowledged this "nip" was not serious, that he did not experience pain, that it did not cause a bump, and that it only resulted in a tender red spot on the back of his head. Mr. Bailey grabbed a second broom and started walking towards offender Hill. Both Bailey and Hill had broom handles and squared off with each other. They swung at each other but did not make contact. Mr. Bailey then dropped his broom handle on the floor. He went into the lower shower and was secured. Mr. Hill turned and started walking up the stairs.

When Officer Robbins realized that another offender besides Mr. Bailey was out on the range, he yelled for Officer Davis. Officer Davis called a "Signal 10-10" and correctional officers responded by entering the range. The offenders were ordered to lock up and both complied without incident. Mr. Bailey and Officer Robbins never spoke to each other either before, during, or after the incident.

Mr. Bailey knows of no reason why anyone would think that he and offender Hill did not get along. Mr. Bailey had no altercations with offender Hill before the incident and always got along with Hill. Mr. Bailey testified that he worries about how the incident could have been worse, that he has trouble sleeping, and that he spoke with mental health staff about the incident.

The prison's internal affairs department investigated the incident after it occurred. During questioning, Officer Robbins openly admitted that he had not scrutinized his actions closely enough and he let keeping track of Officer Davis doing rounds to be an added distraction. The

investigation concluded that Officer Robbins' inexperience was one factor in why two offenders were allowed to be out of their cells at the same time and that the incident "happened as a result of human error and that no malicious intent was involved." Dkt. No. 55-2 at p. 5 (Report of Investigation p. 2). During the investigation by the internal affairs department, Lt. Nicholson questioned Mr. Hill and Mr. Bailey and found no reason to believe that Hill and Bailey had prior knowledge that their two cell doors would be simultaneously opened.

### B. Analysis

At all times relevant to Mr. Bailey's claim, he was a convicted offender. Accordingly, his treatment and the conditions of his confinement are evaluated under standards established by the Eighth Amendment's proscription against the imposition of cruel and unusual punishment. *Helling v. McKinney*, 509 U.S. 25, 31 (1993) ("It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.").

A deliberate indifference Eighth Amendment claim "is comprised of both an objective and a subjective element." *Roe v. Elyea,* 631 F.3d 843, 857 (7th Cir. 2011) (citing *Farmer v. Brennan,* 511 U.S. 825, 834 (1994)). First, the plaintiff must demonstrate that the deprivation he suffered was "sufficiently serious; that is, it must result in the denial of the minimal civilized measure of life's necessities." *Id.* (internal quotation omitted). Life's minimal necessities include "reasonable safety from themselves and others." *DeShaney v. Winnebago County Dept. of Social Services,* 489 U.S. 189, 199 (1989) (internal quotation omitted).

If the conditions at issue were sufficiently serious, then the Court determines whether the defendant acted with deliberate indifference to those conditions. *Townsend v. Fuchs,* 522 F.3d 765, 773 (7th Cir. 2008). Deliberate indifference means that "the official knew that the inmate

faced a substantial risk of serious harm, and yet disregarded that risk by failing to take reasonable measures to address it." *Id.* "As such, it is not enough for the inmate to show that the official acted negligently or that he or she should have known about the risk." *Id.*

Reasonable jurors could disagree as to whether Mr. Bailey has demonstrated that the conditions that existed on February 14, 2014, resulted in sufficiently serious harm. He argues that he "could have been killed." Dkt. 62. The record shows that one swing of a broom nipped him, did not hit him hard, but caused a tender red spot on the back of his head. For purposes of the motion for summary judgment, Mr. Bailey has presented sufficient evidence to create a genuine issue of material fact regarding the seriousness of the harm.

Even if Mr. Bailey has shown an objectively serious injury, however, he has not shown any deliberate indifference to his safety on the part of Officer Robbins. Mr. Bailey did not know Officer Robbins and the two of them had had no contact before, during, or after the incident. There is therefore no evidence of any personal animosity between them.

Mr. Bailey argues that although Officer Robbins states that he, the officer, thought cell 307 was an empty cell, Officer Robbins should have consulted a bed sheet which would have told him who and how many inmates were on the range. This contention is not persuasive factually because to consult a bed sheet to find out how many total inmates were on the range would have taken precious time that was not available at the time Officer Robbins was performing the tasks required of the pod officer. Moreover, at best, this allegation speaks of negligence, which is not sufficient to support a deliberate indifference claim. "Deliberate indifference requires more than evidence of negligence…." *Cesal v. Moats,* 851 F.3d 714, 724 (7th Cir. 2017).

Officer Robbins admittedly made a mistake when he allowed cell 307 to be open at the same time that Mr. Bailey was on the range as the detail worker. The internal affairs investigation determined that Officer Robbins' inexperience played a part in making the mistake. This evidence, combined with the lack of evidence of friction between the two inmates or between Mr. Bailey and Officer Robbins, would not permit a reasonable jury to believe that Officer Robbins was deliberately indifferent to Mr. Bailey's safety. For this reason, Officer Robbins is entitled to summary judgment.

### IV.  Conclusion

Defendant Dustin Robbins is entitled to summary judgment on Mr. Bailey's claim of deliberate indifference. Accordingly, the defendant's motion for summary judgment, dkt. [53], is **granted.** Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 7/19/2017

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

CHRISTOPHER BAILEY
121747
WABASH VALLEY - CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
Electronic Service Participant – Court Only

Robert C. Allega
INDIANA ATTORNEY GENERAL
Robert.Allega@atg.in.gov

Jonathan Paul Nagy
INDIANA ATTORNEY GENERAL
jonathan.nagy@atg.in.gov